Thomas Harry DURKIN

v.

Jack F. DAVIS et al.

Civ. A. No. 74–0416–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 19, 1975.

John D. Grad, Alexandria, Va., for plaintiff.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Petitioner, Thomas Harry Durkin, brings this habeas corpus action attacking the constitutionality of § 53–208 of the Code of Virginia (1950), as amended, and alleging that he has been unconstitutionally denied credit for time spent in the Prince William County, Virginia, jail prior to his conviction in the Circuit Court of Prince William County. Jurisdiction is conferred by 28 U.S.C. § 2254. This matter comes before the Court on petitioner's motion for summary judgment.

### I. STATEMENT OF FACTS

Petitioner was arrested on May 16, 1967 as a result of robbery, abduction, and unauthorized use of motor vehicle charges which were lodged against him. He was incarcerated in the Prince William County jail because too poor to make bail, and in February 1968 was convicted by a jury in the Circuit Court of Prince William County for the above offenses and sentenced to a term of 40 years.[1] Petitioner was continuously incarcerated in the Prince William County jail from May 16, 1967, to September 22, 1968, the date that he effected an escape. Petitioner was subsequently recaptured in Florida and delivered to the Virginia Department of Corrections in June, 1969. Thereafter a judge of the Circuit Court of Prince William County issued an order denying petitioner credit on his sentence for the sixteen months and eight days that he served prior to his escape. The trial judge acted pursuant to § 53–208 of the Code, which provides in pertinent part that:

> Any person who may be sentenced by any court to a term of confinement in the penitentiary . . . for the commission of a crime . . . shall have deducted from such term all time actually spent by such person . . . in jail or the penitentiary awaiting trial, or pending an appeal, and it shall be the duty of the court or judge, when entering the final order in any such case, to provide that such person so convicted be given credit for time so spent . . . . No such

---

1. Petitioner was sentenced to consecutive 20 year terms for the robbery and abduction convictions, and given a five year concurrent sentence on the unauthorized use conviction.

credit, however, shall be given to any person who shall break jail or make an escape.

Section 53–208 provides no mechanism whereby an alleged escapee is given notice of the intention to deny credit and an opportunity to be heard; nor did the judge provide petitioner with notice and an opportunity to be heard before issuing the order denying him jail time credit.

In June 1969, petitioner wrote to the Clerk of the Circuit Court of Prince William County inquiring about his lost jail time and was informed by respondent Leda S. Thomas through her deputy L. E. Athey that "no credit is given to any person who makes an escape." In March, 1974, the petitioner filed a pro se petition for a writ of mandamus with the Supreme Court of Virginia asking that the Supreme Court order the Prince William Circuit Court to credit him with the sixteen months and eight days spent in continuous confinement prior to his escape. On April 24, 1974, the Supreme Court ordered the Superintendent of the Virginia State Penitentiary and the trial judge to show cause why the Writ of Mandamus should not issue. The respondents appropriately answered on May 20, 1974, that the action by the judge and the Circuit Court clerk was mandated by 53–208.

On May 29, 1974, the petitioner responded and on June 4, 1974, the Virginia Supreme Court dismissed the petition for mandamus and assessed costs against the petitioner.

## II. CONCLUSIONS OF LAW

 Petitioner Durkin makes two claims: (1) that the summary deprivation of pre-conviction [2] and post-conviction confinement sentence credit by Prince William County authorities infringed the "liberty" interest protected by the Fourteenth Amendment; and (2) that the summary procedure whereby he was punished for escaping from jail by deprivation of pre-conviction and post-conviction credit infringed his Sixth Amendment right to a trial by jury.[3]

In deciding Durkin's due process claim, the Court must pursue two related lines of inquiry. First, the Court must determine whether the Commonwealth has infringed a constitutionally sheltered "liberty" interest. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A conclusion that the Commonwealth has infringed a protected "liberty" interest triggers a second question: what process should the Commonwealth have accorded Durkin before it deprived him of pre-conviction and post-conviction confinement credit toward his sentence? *Id.*; Bradford v. Weinstein, No. 73–1751, Slip opin. at 13 (4th Cir., Nov. 22, 1974). The answer to this second question will depend upon the nature of the right alleged to have been infringed and the constitutional justifiability of any gov-

2. The Court shall hereinafter refer to credit for pre-trial confinement as "pre-conviction" credit and to the credit given for the time spent awaiting the final disposition of the appeal as "post-conviction" credit.

3. Respondents contend that petitioner's cause is not yet ripe for disposition because he has not properly presented the contentions brought here to the Virginia Supreme Court. Petitioner did, indeed, challenge the deprivation of his pre-conviction and post-conviction confinement sentence credit by operation of § 53–208 of the Code of Virginia through a petition for a writ of mandamus. Respondents assert, however, that habeas corpus, not mandamus, was the proper procedural vehicle for raising petitioner's constitutional claims. The Virginia Supreme Court in rejecting petitioner's application for a peremptory writ of mandamus did not, apparently, rest on the procedural point. It stated that it had given "mature consideration" to the petition and was "of opinion that the writ of mandamus should not issue as prayed for." Durkin v. Superintendent, Order Denying Peremptory Writ of Mandamus (Virginia Supreme Court June 4, 1974). The Court concludes that petitioner has "fairly presented" his federal constitutional claims to the Virginia Supreme Court and has thereby satisfied the exhaustion requirement. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

ernmental interests which the Commonwealth might advance for depriving Durkin of his liberty without according him due process of law. Morrissey v. Brewer, *supra.*

A. The Deprivation of Liberty Claim

In Virginia, a convicted criminal's sentence ordinarily commences at the date of judgment unless there is an appeal in which case the sentence does not begin to run until "the refusal of a writ of error or the affirmance of the judgment." § 53–207 of the Code of Virginia (1950), as amended. Section 53–208 of the Code required that the sentencing court credit a convicted criminal's sentence with all time actually spent in jail, or in the penitentiary while he or she awaits trial or the disposition of an appeal. Such sentence credit is mandatory except where a prisoner shall "break jail or make an escape" and then the statute provides that "no such credit . . . shall be given". In opposing petitioner's motion for summary judgment, the Commonwealth apparently argues that, since the right to pre-conviction and post-conviction sentence credit is ostensibly conferred by state law alone, it need not accord a prisoner due process before withdrawing credit as a result of an escape.

▉▉▉ The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The right to pre-conviction and post-conviction confinement sentence credit constitutes an interest in "liberty" because when such credit is withdrawn, the sentence that a state prisoner must serve is automatically increased and the date for parole eligibility is, thereby, extended. Even if the right to sentence credit was conferred by state law standing alone, the due process clause of the Fourteenth Amendment would still require that the Commonwealth give an escapee a hearing before depriving him of such credit. The "right" or "privilege" [4] accorded a

person convicted of a crime in a state court to remain free on probation, to be paroled after serving part of a sentence, and to earn "good time" credit toward early release while in prison is created by state law. Nevertheless, the Supreme Court has held that the State must provide an individual with certain minimal procedural protections before it revokes probation or parole, or denies a prisoner good time. Gagnon v. Scarpelli, 411 U. S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation due process); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation due process); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (good time denial due process); see generally Landman v. Royster, 333 F.Supp. 621 (E.D. Va. 1971). Just recently, too, the Fourth Circuit has held that the due process clause applies to parole eligibility proceedings. Bradford v. Weinstein, *supra.* As Mr. Justice White said in Wolff v. McDonnell, *supra,* "We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government." 94 S.Ct. at 2976. So, even if the right to pre-conviction and post-conviction sentence credit were created by state law, the Court would have no difficulty in holding that deprivation of such credit would have to be accompanied by some form of due process. The Court, however, concludes that the right to sentence credit springs from a source more fundamental than a § 53–208 of the Code of Virginia; the right is bottomed squarely upon the Fourteenth Amendment to the United States Constitution. Because the Constitutional source of this right affects greatly the quantum of process due the petitioner, a brief discussion of the Constitutional basis for the Court's conclusion is appropriate.

4. Whether a state created benefit is a "right" or "privilege," the state must nevertheless afford an individual due process when it infringes the benefit such that the individual suffers "grievous loss." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

1. The Right to Pre-Conviction Confinement Sentence Credit:

A failure to credit the sentence of a convicted indigent with pre-conviction confinement served would be violative of the Fourteenth Amendment in two respects. First, the equal protection clause commands that an indigent criminal defendant be given pre-conviction confinement credit toward his sentence. Ham v. North Carolina, 471 F.2d 406, 408 (4th Cir. 1973) (Russell, J.); Mohr v. Jordan, 370 F.Supp. 1149, 1152–54 (D.Md.1974), aff'd. No. 74–1496 (4th Cir., June 10, 1974); Workman v. Cardwell, 338 F.Supp. 893, 899 (N.D. Ohio 1972). The failure to give pre-conviction confinement credit to that class of persons who are too poor to make bail would work an invidious discrimination against them solely because of their indigency. Convicted indigents who served pre-conviction confinement because they were too poor to make bail would have to pay a greater penalty than those convicted for the same crimes who were wealthy enough to make bail. As Judge McMillan has written, the inequity in the present bail system which allows "wealthy defendants . . . to remain out of prison until conviction and sentencing" [while] "the poor stay behind bars . . . should not be compounded by refusal to credit prisoners in [the petitioner's] situation with time incarcerated prior to trial and commitment." Culp v. Bounds, 325 F.Supp. 416, 419 (W.D.N.C.1971). The Court can conceive of no rational justification for validating a system which requires the poor to suffer greater punishment than the wealthy solely because of their indigency, and concludes that failure to credit a convicted indigent's sentence with all pre-conviction confinement served constitutes invidious discrimination against the poor. Tate v. Short, 401 U.S. 395, 398, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

Second, failure to give pre-conviction sentence credit to a convicted criminal defendant may burden the Sixth Amendment right to plead not guilty and be tried by a jury. The prospect of lingering in jail until trial and earning no credit toward one's sentence, if found guilty, may induce the defendant to give a quick guilty plea so that he can start serving off his sentence. Hart v. Henderson, 449 F.2d 183, 186 (5th Cir. 1970). Consequently, were pre-conviction confinement credit discretionary with the sentencing judge, there might be greater pressure on the defendant to abandon his right to trial by jury and take a plea bargain in hope that his pre-conviction confinement would be credited to the sentence that he would be required to serve. See Hook v. State of Arizona, 496 F.2d 1172, 1175 (9th Cir. 1974) (where appellant alleged that he pled guilty on the understanding that 236 days served pre-trial would be credited toward the sentence served). Furthermore, knowledge that pre-conviction confinement may not be credited to one's sentence should one be convicted might discourage a defendant from exploring defenses, such as the insanity defense, which require substantial pre-trial time to develop. See Wright v. Maryland Penitentiary, 429 F.2d 1101, 1103–04 (4th Cir. 1970). The Court therefore concludes that the Sixth Amendment, made obligatory upon the states through the due process clause of the Fourteenth Amendment, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), requires that a convicted person be given credit toward his sentence for all pre-conviction confinement served.

In conclusion, the Court points out that the refusal to credit pre-conviction confinement toward a sentence eventually imposed burdens the Sixth Amendment rights of both the indigent and the non-indigent. In four recent memorandum decisions, the Court of Appeals, citing Ham v. North Carolina, *supra*, has awarded pre-conviction confinement sentence credit to state prisoners without discussing at all their indigency, or lack of same. Steele v. North Carolina, 475 F.2d 1401 (4th Cir., 1973); Meadows v. Coiner, 475 F.2d 1400 (4th Cir., 1974); Sypolt v. Coiner, No. 73–

1339 (4th Cir., May 17, 1973); Mohr v. Jordan, No. 74–1496 (4th Cir., June 10, 1974). Although the Court is mindful of the Fourth Circuit's admonition that memorandum decisions are not to be accorded precedential value, see Jones v. Superintendent, 465 F.2d 1091, 1094 (4th Cir. 1972), the legal trend evinced by these four memorandum decisions, with all seven active judges participating in one or more of them, leads the Court to the conclusion that it is now the law in this circuit that an individual convicted of a crime has a constitutional entitlement to pre-conviction confinement sentence credit, whether indigent or not. Mohr v. Jordan, *supra*, 370 F.Supp. at 1154.

2. The Right to Post-Conviction Confinement Sentence Credit:

■ There are three constitutionally sufficient reasons for requiring that all post-conviction confinement be credited toward a convicted person's sentence. First, in Virginia, as in many other states, where a convicted criminal defendant appeals his conviction, his sentence does not begin to run until final disposition of the appeal. See § 53–207 of the Code of Virginia. If a convicted person were not given post-conviction confinement credit toward his sentence, then he might be inhibited from exercising his right of appeal. Hart v. Henderson, 449 F.2d 183, 184–85 (5th Cir. 1971). It may take years to complete appellate review of a state criminal conviction. Without mandatory post-conviction credit, a convicted criminal defendant who appeals his conviction cannot always expect to begin serving his sentence until after the appeals process has run its course. Convicted criminal defendants who unsuccessfully appeal their convictions, theoretically would always have to serve a longer sentence than criminal defendants who choose not to appeal. Such discrimination between those who choose to appeal their convictions and those who do not is constitutionally intolerable because it "tends to impede open and equal access to appel-

late review since it may deter a defendant from appealing because of a fear that the sentencing judge will not give him credit for the time that he has spent in jail pending appeal." Robinson v. Beto, 426 F.2d 797, 799 (5th Cir. 1970). *Cf.* North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656(1969).

Second, the failure to give post-conviction credit to a convicted person who remains in confinement pending appeal effectively punishes that person twice for the same offense. Punishment is exacted once by confining the person from conviction to final disposition of his appeal, and is exacted again when the convicted person begins service of his sentence. The Fifth Amendment guarantee against double jeopardy, made applicable to the states by the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), "protects against multiple punishments for the same offense." North Carolina v. Pearce, *supra*, 395 U.S. at 717, 89 S. Ct. at 2076. In order to preclude the possibility, therefore, that a convicted person will suffer multiple punishment for the same offense in violation of the "double jeopardy" clause, the state must, as does Virginia, except as heretofore noted, fully credit post-conviction confinement toward the sentence to be served by a criminal defendant because it is "punishment already exacted," *Id.* 395 U.S. at 718, 89 S.Ct. 2072, 23 L.Ed.2d 656. As Judge Butzner stated for the Fourth Circuit in Wilson v. State of North Carolina, 438 F.2d 284, 286 (4th Cir. 1971), a convicted criminal defendant is ". . . entitled to credit for the entire period he was detained after he was placed in jeopardy for the offense resulting in his conviction . . . ."

Third, as the Court has heretofore pointed out, should a convicted indigent be incarcerated pending appeal because too poor to make bail, and bail would have been otherwise available, the equal protection clause commands that he or

she be given sentence credit for all post-conviction confinement served.

### B. Due Process

 The Court concludes, therefore, that in light of the "liberty" interest involved, the right to pre-conviction and post-conviction confinement sentence credit is sourced in the United States Constitution and is, therefore, absolute. By contrast state created "rights" or "privileges," such as probation, parole, and "good time" toward early release are "conditional." They are conditioned upon the observance of certain standards of behavior while under the close supervision of state law enforcement authorities. Revocation of probation or parole, or denial of good time "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special . . . restrictions." Morrissey v. Brewer, *supra*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Even though an individual's liberty may be dependent upon compliance with certain conditions, termination of that liberty nevertheless "calls for some orderly process, however informal," whenever termination will inflict "grievous loss" upon the individual. *Id.* Landman v. Royster, 333 F.Supp. 621, 651–52 (E.D.Va.1971). Where, however, an individual's liberty is absolute and "unqualified," Morrissey v. Brewer, *supra*, 408 U.S., at 482, 92 S.Ct. 2593, 33 L.Ed.2d 484, and the State seeks to punish the individual for commission of a crime by termination of that liberty, then the Fifth, Sixth and Fourteenth Amendments require that the termination be preceded by the full panoply of criminal procedural rights. Duncan v. Louisiana, *supra*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

 Although an individual need not demonstrate any prejudice whatsoever in order to vindicate his right to the ful panoply of criminal procedural protections before being subjected to punishment for commission of a crime, the Court finds it illustrative to point out, even while assuming his guilt, how the deprivation of Durkin's Fifth, Sixth, and Fourteenth Amendment rights may have subjected him to grievous prejudice.

 Virginia statutes provide two ways by which the Commonwealth may punish a prisoner who escapes. Section 53–208 requires the sentencing court or judge to deprive the prisoner of all pre-conviction and post-conviction sentence credit, and the Commonwealth may also prosecute the prisoner for the crime of escape for which there is a maximum punishment of six months if the escape was accomplished, as in Durkin's case, without using force or violence or setting fire to the jail. Section 18.1–290 of the Code of Virginia (1950), as amended. Both procedures achieve the same result: they deprive the prisoner of liberty to which he or she has a fundamental entitlement. In the latter case, the escapee may be sentenced to a new term of imprisonment for up to six months; in the former case, the Commonwealth exacts as punishment all pre-conviction and post-conviction confinement credit which the prisoner has accrued while awaiting trial and/or final disposition of an appeal and which as a matter of constitutional law must be credited toward his sentence. Both procedures, therefore involve exaction of a penalty for the crime of escape quite apart and quite distinct from any penalty which the prisoner may be serving at the time that he or she escapes. Aside from the capricious way in which § 53–208's summary deprivation penalty is computed—the penalty exacted depends upon the length of pre-conviction and post-conviction confinement already served and bears no relationship to the manner in which the escape was effected or other mitigating circumstances—there exists a fundamental distinction in the manner by which the two penalties are exacted. A prisoner, such as Durkin, who is prosecuted pursuant to the criminal code,

may exercise without obstacle the rights guaranteed by the Sixth Amendment.[5] On the other hand, the summary operation of § 53–208 deprives a prisoner of his fundamental right to liberty without according him his Sixth Amendment rights: the right to be informed of the accusation against him; the right to a speedy and public trial before an impartial jury; the right to present evidence and defenses in his own behalf and to confront the witnesses against him; and the right to counsel.

Although petitioner freely admits that he effected a non-violent escape from the Prince William jail, the deprivation of his Sixth Amendment right may, nevertheless, have worked great prejudice against him because it deprived him of the opportunity to assert one or all of the well recognized defenses to the crime of escape. See People v. Lovercamp, 118 Cal.Rptr. 110 (Calif.Ct.App., 4th Dist., 1974) (defense of "necessity"); People v. Luther, 53 Mich.App. 648, 219 N.W.2d 812 (1974) (fear of homosexual assault); People v. Wester, 237 Cal.App. 2d 232, 46 Cal.Rptr. 699 (1965) (threat of physical violence); Lange v. Schauer, 520 P.2d 753 (Col.1974) (insanity); Ware v. Garvey, 139 F.Supp. 71 (D. Mass.1956) (illegal confinement). Specifically, petitioner asserts that he was denied his right to a public trial because the Prince William authorities were reluctant to have publicly aired the "severe and possibly criminal irregularities which said officials encouraged petitioner Durkin to undertake with them in the operation and running of Prince William County jail and in the provision of services to various personnel." Since respondents do not deny this allegation, it is established as factual for purposes of this motion for summary judgment, Rule 56(e), F.R.Civ.P., and the Court must,

therefore, conclude that the respondents by denying petitioner the right to defend against the charge of escape have precluded him from raising matters which may have established a defense or, at the very least, might have tended to mitigate his punishment.

The Court concludes that the summary deprivation of Durkin's pre-conviction and post-conviction confinement sentence credit by operation of § 53–208 of the Code of Virginia (1950), as amended, infringed constitutional rights guaranteed Durkin by the Fifth, Sixth and Fourteenth Amendments. Accordingly, summary judgment shall be granted to the petitioner and his credits shall be restored.

An appropriate order shall enter.

5. The Sixth Amendment states:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.