# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 25th day of July, 2024.*

Present: Goodwyn, C.J., Powell, Kelsey, McCullough, Russell, and Mann, JJ.

JOHN CORNELIUS GASKINS,                                                    PETITIONER,

against        Record No. 220807

HAROLD W. CLARKE, DIRECTOR,                                      RESPONDENT.

UPON A PETITION FOR A WRIT OF HABEAS CORPUS

Upon consideration of the petition for a writ of habeas corpus filed December 7, 2022, the rule to show cause, the respondent's motion to dismiss, petitioner's reply, the findings of fact submitted by the Circuit Court of Fairfax County, petitioner's December 5, 2023 supplement,[1] and the parties' supplemental briefs, the Court is of the opinion that the motion should be granted and the petition should be dismissed.

In December 2018, petitioner was convicted in the Circuit Court of Fairfax County of being a violent felon in possession of a firearm and sentenced to the statutorily mandated term of five years' imprisonment. Petitioner was released on bail pending his appeal of his conviction and allowed to reside in Laurel, Maryland.

In April 2020, while petitioner's appeal was pending in this Court, he was arrested in Prince George's County, Maryland, on charges of assault, possession of a firearm, and use of a firearm in a violent felony. He was later charged with attempted murder, reckless endangerment, and possession of ammunition (collectively, "Prince George's charges"). Due to the Prince George's charges, petitioner was also charged in Montgomery County, Maryland, with violating the terms of his probation there. While incarcerated on the Prince George's charges, petitioner failed to appear in court for a traffic violation case in Anne Arundel County, Maryland. This Court refused petitioner's Virginia appeal on November 25, 2020.

---

[1] The Court grants petitioner's motion to supplement the record and the supplemental record is deemed filed.

In Maryland, petitioner was initially held without bond on the Prince George's charges. Due to the COVID-19 pandemic, the Prince George's court granted petitioner's request for release to home confinement, conditioned on pretrial services determining he qualified for release. To qualify, petitioner needed a verified address, which he had, and to be free of warrants and detainers. Thus, petitioner initially did not qualify for release to home confinement because he had outstanding warrants in Montgomery and Anne Arundel Counties. However, both of those warrants were quashed by December 1, 2020. At that point, the only impediment to petitioner's home confinement was the weekslong "backlog" of cases waiting to be processed by Prince George's pretrial services.

On January 29, 2021, upon learning of petitioner's incarceration in Maryland, the Fairfax Circuit Court issued a bench warrant for petitioner's arrest, revoked the appeal bond, and ordered that a detainer be issued to Prince George's County to have petitioner returned to Fairfax County. At the time the detainer issued, petitioner's case had yet to be processed by Prince George's pretrial services. After the detainer issued, it became the sole reason Maryland officials determined not to release petitioner to home confinement.

On November 22, 2021, petitioner's Prince George's charges were dismissed by nolle prosequi. In seeking the Maryland court's approval of the dismissal, the prosecution explained it had been "unable to reach the victim" for "a long time" and no longer believed it could prove the charges against petitioner. When approving the dismissal, the court expressed its disappointment that the prosecution had allowed petitioner to "languish in jail" for as long as it had after losing contact with its key witness. On December 1, 2021, petitioner was extradited to Virginia.

On March 8, 2022, petitioner became a state responsible inmate subject to the VDOC's custody. Shortly thereafter, petitioner asked the VDOC for credit toward his five-year Virginia sentence for the time he spent in Maryland custody subject to the Virginia detainer from January 29 to November 22, 2021—a period of 298 days. The VDOC informed petitioner he would receive credit for only the eight days of his time in Maryland custody corresponding with the time he spent awaiting extradition to Virginia after the Prince George's charges were dismissed.

In a portion of his petition, petitioner argues Code § 53.1-187 requires that his Virginia sentence be credited for the time he spent incarcerated in Maryland from the date his appeal bond was revoked and the Virginia detainer issued to the date his Prince George's charges were dismissed because that incarceration "ar[ose] out of [the] detainer." Petitioner asserts he was

being held during this time "on both his Prince George's . . . charges, and his detainer from Fairfax Virginia (resulting from an active prison sentence)."

The Court holds this claim is without merit. As relevant here, Code § 53.1-187 provides sentence credit to "any person who is sentenced to a term of confinement in a correctional facility" for time that person spent awaiting trial or pending an appeal confined in a "state or local correctional facility." Elsewhere in Title 53, a "local correctional facility" is defined for purposes of the Title as a facility "owned, maintained or operated by any political subdivision or combination of political subdivisions of the Commonwealth," and a "state correctional facility" is defined as a facility "operated by the Department of Corrections." Code § 53.1-1. Because petitioner has not demonstrated he was housed "in a state or local correctional facility" as defined by Code § 53.1-1 while he was confined in Maryland, he has not established his entitlement to credit toward his Virginia sentence for that confinement under Code § 53.1-187.

In another portion of his petition, petitioner argues the federal Due Process Clause requires that his Virginia sentence be credited for the time he spent incarcerated in Maryland. Citing *Durkin v. Davis*, 390 F. Supp. 249 (E.D. Va. 1975), petitioner asserts he has a protected liberty interest in credit toward his Virginia sentence for any post-conviction incarceration he has served due to that sentence. *See id.* at 252 ("The right to pre-conviction and post-conviction confinement sentence credit constitutes an interest in 'liberty' because when such credit is withdrawn, the sentence that a state prisoner must serve is automatically increased and the date for parole eligibility is, thereby, extended."), *rev'd on other grounds*, 538 F.2d 1037 (4th Cir. 1976). Relying solely on *Durkin*, petitioner argues that, because he would have been released to home confinement in Maryland but for his Virginia detainer, his Maryland incarceration is the equivalent of time served on his Virginia sentence such that he has a constitutional right to receive credit for all the time he spent incarcerated in Maryland while the Virginia detainer was pending.

The Court holds this claim is without merit. While the Due Process Clause precludes states from "depriv[ing] any person of life, liberty, or property without due process of law," petitioner fails to demonstrate that Virginia, as opposed to Maryland, deprived him of his opportunity to be held on home confinement while his Prince George's charges remained pending. Although Maryland may have chosen to release petitioner to home confinement were it not for his Virginia detainer, the sole and ultimate discretion to make that choice and decide how

3

or where petitioner would await the resolution of his Prince George's charges remained exclusively with Maryland and its officials.

As an initial matter, Maryland had the power to incarcerate petitioner without bail based on his Prince George's charges alone, regardless of the detainer, and it did so during the months before the detainer issued. *See United States v. Salerno*, 481 U.S. 739, 751 (1987) ("When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat."); *Mora v. City of Gaithersburg*, 519 F.3d 216, 222 (4th Cir. 2008) (explaining that, "although the Due Process Clause typically requires a criminal conviction before a person may be deprived of liberty," certain categories of people can be constitutionally detained without conviction, including "dangerous suspects awaiting trial"); *see also Bradds v. Randolph*, 239 Md. App. 50, 54 (2018) (observing the "Maryland Rules long have recognized that decisions about whether and on what terms to release defendants before trial are discretionary"). Further, petitioner's detainer was not governed by the Interstate Agreement on Detainers ("IADA"), to which Virginia and Maryland are parties and by which they can impose reciprocal obligations on one another when lodging detainers. *See* Code §§ 53.1-210 et seq. (implementing IADA in Virginia); Md. Code Ann., Corr. Servs. §§ 8-401 et seq. (implementing IADA in Maryland); *see also Carchman v. Nash*, 473 U.S. 716, 719 (1985) ("The [IADA] is a congressionally sanctioned interstate compact . . . and thus is a federal law subject to federal construction."). By its terms, the IADA governs detainers based on "any untried indictment, information or complaint." Code § 53.1-210, art. III(a); Md. Code Ann., Corr. Servs. § 8-405, art. III(a). Consistent with this language, the United States Supreme Court has held that Congress intended the IADA "to apply only to detainers based on untried criminal charges." *Carchman*, 473 U.S. at 728-34 (holding IADA does not apply to detainers based on "a pending probation-violation charge"); *see also State v. Jimenez*, 808 N.W.2d 352, 355-57 (Neb. 2012) (holding IADA did not apply to detainer issued after petitioner was convicted but before he was sentenced and citing accordant cases). Because the detainer here was not based on "untried criminal charges," it did not trigger any of the reciprocal obligations Virginia might place on Maryland by issuing a detainer against someone in its custody, like petitioner.

4

Outside the bounds of the IADA, the detainer had no coercive force or controlling authority over Maryland's decision to keep petitioner confined in jail, rather than at home, pursuant to the Prince George's charges. Instead, the detainer operated as merely a "'matter of comity'" between two coequal sovereigns: Virginia and Maryland. *Rease v. Commonwealth*, 227 Va. 289, 294 & n.* (1984) (quoting *Moody v. Daggett*, 429 U.S. 78, 80, n.2 (1976)). As this Court has explained, comity "is not a matter of obligation. It is a matter of favor or courtesy, based on justice and good will. . . . Comity is not given effect when to do so would prejudice a State's own rights or the rights of its citizens." *McFarland v. McFarland*, 179 Va. 418, 430 (1942) (holding principles of comity did not require a Virginia court to give effect to a divorce decree from North Carolina); *see also Wilkinson v. Youell*, 180 Va. 321, 326 (1942) (explaining that, where a prisoner is "charged with the violation of the criminal laws of two sovereignties," the sovereignty with custody of the prisoner has a "strict right to exclusive custody," and any waiver of that right "'is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it'" under the rules of comity) (quoting *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922)). Federal courts agree and have stated that comity is a matter of discretion rather than obligation, and thus authority over a detainee facing charges or sentences in multiple jurisdictions belongs to the jurisdiction with physical custody of the detainee. *See, e.g.*, *Hernandez v. United States Attorney Gen.*, 689 F.2d 915, 918 (10th Cir. 1982) ("Whether jurisdiction and custody of a prisoner shall be retained or surrendered is a matter of comity and is to be determined by the sovereign having custody.") (internal quotation marks and citation omitted); *Strand v. Schmittroth*, 251 F.2d 590, 598 (9th Cir. 1957) (explaining, in holding a federal district court had no authority to order state officials to transfer custody of a state prisoner to federal officials, that "[a]s courtesy cannot be enforced, neither can comity," and "the court of one sovereign [therefore] cannot compel the exercise of comity by the court of a different power").

Numerous federal courts have distilled these notions of comity as they apply to authority over detainees facing charges or sentences in multiple jurisdictions into the "doctrine of primary jurisdiction" or "primary custody." *See, e.g.*, *Johnson v. Gill*, 883 F.3d 756, 761-63 (9th Cir. 2018) (citing *Ponzi*, 258 U.S. at 259); *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018); *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *see also Thomas v. Whalen*, 962 F.2d 358, 362

5

n.7 (4th Cir. 1992) (discussing "primary jurisdiction").[2] Under this doctrine, the "primary jurisdiction over a person is generally determined by which [sovereign] first obtains custody of, or arrests, the person," and primary jurisdiction then continues "until the first sovereign relinquishes its priority in some way." *Cole*, 416 F.3d at 897. Courts applying this doctrine generally agree that a sovereign relinquishes primary jurisdiction by, among other acts, releasing a detainee on bail or dismissing the charges against him. *Id.*; *accord, e.g.*, *Johnson*, 883 F.3d at 765; *Pope*, 889 F.3d at 415. Further, a sovereign does not obtain primary jurisdiction merely by issuing a detainer. *See, e.g.*, *Thomas*, 962 F.2d at 360 ("A detainer neither effects a transfer of a prisoner from state to federal custody nor transforms state custody into federal custody by operation of law."); *Wiseman v. Wachendorf*, 984 F.3d 649, 654 (8th Cir. 2021) ("A detainer . . . does not alter the custody status of a prisoner.") (citing *Thomas*). To the contrary, issuing a detainer indicates the issuing state has "agreed to surrender primary jurisdiction." *Johnson*, 883 F.3d at 766 (holding Texas' issuing detainer with respect to prisoner in federal custody supported conclusion that Texas had surrendered primary jurisdiction).

Applying this framework to the facts here further underscores that Virginia had no authority over petitioner's confinement or the location thereof in Maryland while the Prince George's charges remained pending. Although Virginia may have obtained primary jurisdiction over petitioner when it arrested and later convicted him on his charge in Fairfax County, it relinquished that primary jurisdiction when it released him on bail pending appeal. Maryland then obtained primary jurisdiction when it arrested petitioner on the Prince George's charges. As long as those charges were pending, Maryland maintained primary jurisdiction and, by extension, ultimate authority over the status of petitioner's custody. Only after those charges were dismissed did Maryland relinquish that authority. Consistent with these changes in authority over petitioner's detention, he has received credit for the time he spent incarcerated in Maryland after the Prince George's charges were dismissed.

---

[2] The federal courts articulated this doctrine to address jurisdiction "[a]s between the state and federal sovereigns." *Cole*, 416 F.3d at 897. Some state courts have applied it to situations like the one here, to address jurisdiction over a detainee as between two states. *See, e.g.*, *Matter of Blake v. Inmate Records Clerk*, 213 A.D.3d 1037, 1039 (N.Y. App. Div. 2023) (applying doctrine as between New York and Delaware); *State v. Start*, 427 N.W.2d 800, 803 (Neb. 1988) (discussing same as between Nebraska and Colorado).

In sum, as a matter of comity, the detainer here was not an exercise of any authority by Virginia over Maryland or petitioner, much less an exercise of authority that deprived petitioner of his liberty or his ability to be confined at home. The detainer was merely a request from Virginia that Maryland officials were free to reject, and Maryland's decision to deny petitioner release to home confinement based on the detainer was therefore an exercise of only Maryland's own sovereign power. Had Maryland decided to release petitioner notwithstanding the detainer, Virginia would have had no recourse to challenge that decision or seek to overturn it. *See Strand*, 251 F.2d at 600 (stating that where a prisoner subject to a conviction in one state leaves that state and is arrested in a second state, the first state "has no prior rights," its "officers cannot take the prisoner from the custody of the" second state, and its "courts cannot enjoin the [second state's] courts from proceeding"). We therefore reject petitioner's assertion that his incarceration in Maryland was equivalent to time served on his Virginia conviction.

Further, under similar circumstances, where a prisoner seeks credit toward a sentence imposed by one sovereign for time he spent incarcerated by a separate sovereign, federal courts have held that due process protections do not require granting such credit. *See, e.g.*, *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (holding due process did not require crediting Bagley's Iowa sentence with time he served on a federal sentence that was later vacated). *Bagley* explained that "federal courts have found no due-process violation from a denial of federal credit for time served on a vacated state sentence, even when service of the state sentence delayed the start of a federal sentence." *Id.* at 330.[3] *Bagley* thus concluded "the federal Constitution did not require the state of Iowa . . . to grant [a prisoner] credit on a state sentence on account of legal

---

[3] This Court has held that "where a prisoner is . . . being detained under a void sentence, he is entitled to credit for the time served under such sentence on a valid sentence, or sentences, entered against him prior to the time he began serving the void sentence." *Peyton v. Christian*, 208 Va. 105, 108 (1967) (holding petitioner was entitled to credit toward a 1945 sentence in Portsmouth for time spent confined on a 1944 sentence in Norfolk that was later declared void) (internal quotation marks and citation omitted). Similarly, the Fifth Circuit in *Scott v. United States*, 434 F.2d 11 (5th Cir. 1970), a case relied on by *Bagley*, acknowledged that, "if several or consecutive *federal* sentences are imposed upon a defendant, some of which are void, credit against the valid sentence should be given for the time spent in federal custody." *Id.* at 21 (emphasis in original). Nevertheless, *Scott* held this rule does not apply where the void sentence and the valid sentence were imposed by different jurisdictions, in that case Mississippi and the United States. *Id.* at 21-22. In the same way, the rule articulated in *Peyton* does not apply here where petitioner seeks credit toward a Virginia sentence for time he spent incarcerated pursuant to Maryland's sole authority.

errors made by the federal district court" because if "an injustice has been done, it has been done by the United States, not by the State of Iowa." *Id.* Here too, we conclude that due process does not require Virginia to grant petitioner credit toward his Virginia sentence for time he spent incarcerated on his Prince George's charges subject to Maryland authority, even when his time in Maryland delayed the start of his Virginia sentence, and even assuming, as petitioner asserts, the circumstances surrounding the dismissal of his Prince George's charges indicate he was "unjustly" incarcerated in Maryland. As in *Bagley*, any injustice is attributable to Maryland and not Virginia.

This conclusion comports with the more general principle that a deprivation of liberty or property is not, under the Due Process Clause, "attributable to a State unless it is traceable to the State's power or authority." *See Lindke v. Freed*, 601 U.S. 187, 194-95, 198 (2024) (interpreting "statutory requirement of action 'under color of state law'" under 42 U.S.C. § 1983 and explaining that this requirement "and the 'state action' requirement of the Fourteenth Amendment are identical") (internal quotation marks and citation omitted). Because Virginia exercised no power or authority over Maryland's decision to incarcerate petitioner while the Prince George's charges were pending, any associated deprivation of liberty is not sufficiently attributable to Virginia to implicate the Due Process Clause.

It follows that the circumstances here are materially distinguishable from those in *Durkin*, the sole authority petitioner cites in support of his due process claim. There, a Virginia court denied statutorily created sentence credit to a prisoner for time he spent incarcerated in a Virginia jail, both pretrial and post-conviction, because he had escaped from the jail and fled to Florida. A prisoner's escape provided a basis for denying credit under the relevant statute,[4] and the prisoner complained he had not received sufficient procedural due process before the court concluded he was an escapee and denied him the credit he would otherwise have been due. *Durkin*, 390 F. Supp. at 250-51. In concluding the prisoner was entitled to greater process than he received, *Durkin* determined, in part, that the prisoner had a constitutionally protected liberty interest in "pre-conviction and post-conviction confinement sentence credit." *Id.* at 252-56.

---

[4] Former Code § 53-208, the precursor to Code § 53.1-187, provided that any person sentenced to a term of imprisonment was entitled to credit toward that sentence for "all time actually spent by such person . . . in jail or the penitentiary awaiting trial, or pending an appeal," but "[n]o such credit . . . shall be given to any person who shall break jail or make an escape."

Unlike petitioner, however, the prisoner in *Durkin* sought credit for confinement that occurred exclusively in Virginia. And the credit he sought would have gone toward his sentence on the same Virginia convictions on which that confinement was based. Here by comparison, petitioner demands credit toward his Virginia sentence for time he was confined in another state due to unrelated charges brought by that state. *Durkin* does not hold that due process entitles petitioner to such credit and, for the reasons above, neither do we.

Finally, petitioner argues for the first time in his supplemental brief that failure to award him the sentence credit he seeks would violate the Fifth Amendment's prohibition on double jeopardy. He contends that because he was incarcerated in Maryland after jeopardy attached to his Virginia conviction, failing to grant him credit for his time in the Maryland jail would effectively punish him twice for the same offense.

This claim is not properly before the Court because it was not raised in petitioner's initial petition and because petitioner has not sought nor been granted leave to amend his petition to include this claim. *See* Code § 8.01-654(B)(2) (a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing"); Rule 1:8 ("No amendments may be made to any pleading after it is filed save by leave of court."); Rule 5:7(e) (a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the Court to do so).

Upon further consideration whereof, petitioner's motions for bail, bond, or release pending the resolution of his petition are denied as moot.

Accordingly, the petition is dismissed and the rule is discharged.

This order shall be published in the Virginia Reports and certified to counsel for the petitioner and counsel for the respondent.

A Copy,

Teste:

Clerk

9