*Aaron Bradds & Samuel Hill v. Dionne Randolph, Warden*, Nos. 77 & 78, September Term 2018. Opinion by Nazarian, J.

**BAIL REVIEW – REVISIONS TO MARYLAND RULES 2-416 AND 2-416.1**

Pursuant to revised Maryland Rules 2-416 and 2-416.1, reviewing courts must determine first whether defendants represent a flight risk or a danger to victims, others, or society. If so, they must be held pending trial.  If not, they must be released, subject to appropriate conditions. The court should impose the least onerous possible conditions of release, beginning with non-financial conditions. Financial conditions are available as a last resort, but may not be imposed unless the court undertakes an individualized analysis of the defendant's ability to pay, and may not impose financial conditions the defendant has no chance of meeting.

Circuit Court for Baltimore City
Case Nos. 24H18000063 and
24H18000072

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 77 & 78

September Term, 2018
_____

AARON BRADDS AND SAMUEL HILL

v.

DIONNE RANDOLPH, WARDEN
_____

Nazarian,
Leahy,
Krauser, Peter B.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Nazarian, J.
_____

Filed:  September 28, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ʺ authentic.



Suzanne C. Johnson, Acting Clerk

I've got clean away but I'll be back some day,
just the combination will have changed
Someday they'll catch me, to a chain they'll attach me,
but 'til that day I'll ride the old crime wave
And if they try to hold me for trial,
I'll stay out of jail by paying my bail
And after I'll go to the court of appeal saying
"You've done me wrong," it's the same old song forever.[1]

We start with first principles: people who have been arrested are presumptively innocent until proven guilty beyond a reasonable doubt, and normally should be released pending trial, subject to appropriate conditions, unless they pose flight risks or danger to the public. As a cultural matter, though, we tend to shorthand pretrial release conditions with the term "bail," and to assume that release requires some sort of payment or financial commitment. We have learned over time that when courts rely primarily or overwhelmingly on financial pretrial release conditions, many defendants remain incarcerated when they shouldn't, merely because they can't post cash or a bond (while wealthier defendants, who might be just as dangerous or pose equal flight risks, can secure their freedom with money). And beyond the obvious deprivations of liberty, overreliance on financial conditions places lower-income people at a disadvantage in defending their cases and distorts their calculus as they consider whether to plead guilty or go to trial.

In 2017, the Court of Appeals's Standing Committee on Rules and Procedure recommended revisions to the Maryland Rules governing pretrial release. The Court of Appeals adopted the revisions with amendments, and thus went into effect on (and apply to all actions commenced on or after) July 1, 2017. Stated generally, the new Rules directed

---

[1] GENESIS, *Robbery, Assault, and Battery*, A TRICK OF THE TAIL (Charisma Records 1976).

trial courts to detain defendants who pose flight risks or who are dangerous, and to release everyone else subject to non-financial conditions, except as a last resort. Even then, though, the Rules require courts to take the defendant's financial circumstances into account and prohibit financial conditions a defendant has no hope of meeting.

The appellants in these consolidated cases are criminal defendants who filed petitions for writs of *habeas corpus* in the Circuit Court for Baltimore City after the District Court ordered them held in lieu of bonds that, they say, they cannot afford. The appellants argue that the *habeas* court erred in denying the petitions and that the bonds set for them violated the revised Maryland Rules. The State agrees that the court should at least have held a hearing before denying the *habeas* petitions and asks that we vacate the denials and remand for a hearing.

After argument in this Court on June 11, 2018, we issued an order reversing the judgments and remanding both cases to the circuit court with directions to grant the petitions for writs of *habeas corpus* and to order new bail reviews pursuant to Maryland Rule 4-216.1, and we directed the mandate to issue forthwith. In this opinion, we explain our decision.

## I.    BACKGROUND

### A.    The Maryland Rules Governing Bail Review.

#### 1.    Before: The Old Rule 4-216

The Maryland Rules long have recognized that decisions about whether and on what terms to release defendants before trial are discretionary, and courts have always had broad authority to impose appropriate conditions. Before July 1, 2017, Rule 4-216 provided

2

generally that defendants were entitled to release on personal recognizance or on bail, with or without conditions, unless the court determined that no condition would ensure his or her appearance or safeguard the public. The Rule directed judicial officers to consider a variety of factors, required them to impose the least onerous conditions that would ensure the defendant's appearance and protect the public, and authorized them to place defendants under supervision, restrict their movement, set bond, or to impose other appropriate conditions:

> **c) Defendants eligible for release by commissioner or judge.** In accordance with this Rule and Code, Criminal Procedure Article, §§5-101 and 5-201 and except as otherwise provided in section (d) of this Rule or by Code, Criminal Procedure Article, §§ 5-201 and 5-202, a defendant is entitled to be released before verdict on personal recognizance or on bail, in either case with or without conditions imposed, unless the judicial officer determines that no condition of release will reasonably ensure (1) the appearance of the defendant as required and (2) the safety of the alleged victim, another person, and the community.
>
> * * *
>
> **e) Duties of judicial officer.** (1) Consideration of factors. In determining whether a defendant should be released and the conditions of release, the judicial officer shall take into account the following information, to the extent available:
>
>> (A) the nature and circumstances of the offense charged, the nature of the evidence against the defendant, and the potential sentence upon conviction;
>>
>> (B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;
>>
>> (C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;

(D) any recommendation of an agency that conducts pretrial release investigations;

(E) any recommendation of the State's Attorney;

(F) any information presented by the defendant or defendant's attorney;

(G) the danger of the defendant to the alleged victim, another person, or the community;

(H) the danger of the defendant to him or herself;

(I) any other factor bearing on the risk of a willful failure to appear and the safety of the alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within three years of the date the defendant is charged as an adult.

(2) Statement of reasons – When required. Upon determining to release a defendant to whom section (c) of this Rule applies or to refuse to release a defendant to whom section (b) of this Rule applies, the judicial officer shall state the reasons in writing or on the record.

(3) Imposition of conditions of release. If the judicial officer determines that the defendant should be released other than on personal recognizance without any additional conditions imposed, the judicial officer shall impose on the defendant the least onerous condition or combination of conditions of release set out in section (g) of this Rule that will reasonably:

(A) ensure the appearance of the defendant as required,

(B) protect the safety of the alleged victim by ordering the defendant to have no contact with the alleged victim or the alleged victim's premises or place of employment or by other appropriate order, and

(C) ensure the defendant will not pose a danger to another person or to the community.

(4) Advice of conditions; consequences of violation; amount and terms of bail. The judicial officer shall advise the defendant in writing or on the record of the conditions of release imposed and of the consequences of a violation of any condition. When bail is required, the judicial officer shall state in writing or on the record the amount and any terms of the bail.

**f) Conditions of release.** The conditions of release imposed by a judicial officer under this rule may include:

(1) committing the defendant to the custody of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court;

(2) placing the defendant under the supervision of a probation officer or other appropriate public official;

(3) subjecting the defendant to reasonable restrictions with respect to travel, association, or residence during the period of release;

(4) requiring the defendant to post a bail bond complying with Rule 4-217 in an amount and on conditions specified by the judicial officer, including any of the following:

   (A) without collateral security;

   (B) with collateral security of the kind specified in Rule 4-217 (e)(1)(A) equal in value to the greater of $100.00 or 10% of the full penalty amount, and if the judicial officer sets bail at $2500 or less, the judicial officer shall advise the defendant that the defendant may post a bail bond secured by either a corporate surety or a cash deposit of 10% of the full penalty amount;

   (C) with collateral security of the kind specified in Rule 4-217 (e)(1)(A) equal in value to a percentage greater than 10% but less than the full penalty amount;

   (D) with collateral security of the kind specified in Rule 4-217 (e)(1) equal in value to the full penalty amount;

   (E) with the obligation of a corporation that is an insurer or other surety in the full penalty amount;

(5) subjecting the defendant to any other condition reasonably necessary to:

   (A) ensure the appearance of the defendant as required,

   (B) protect the safety of the alleged victim, and

   (C) ensure that the defendant will not pose a danger to another person or to the community; and

(6) imposing upon the defendant, for good cause shown, one or more of the conditions authorized under Code, Criminal Article, § 9-304 reasonably necessary to stop or prevent the

5

> intimidation of a victim or witness s or a violation of Code,
> Criminal Law Article, § 9-302, 9-303, or 9-305.

Md. Rule 4-216. It shouldn't be, and isn't, surprising that a Rule requiring complex, on-the-fly, multi-factorial, discretionary decisions would lead to a range of results across the thousands of bail review hearings each year across the State. But it emerged over time that a disproportionate number of indigent defendants—disproportionately African-American and Hispanic men[2]—were being held before trial for no reason other than being unable to afford bail,[3] and even though their charges, if proven, often would result solely in fines or less than a year in jail.[4]

On October 11, 2016, the Maryland Office of the Attorney General issued an advice letter (the "Letter") opining to certain members of the Maryland General Assembly that Rule 4-216, as it was being applied, violated both the due process rights of defendants and the Constitutional prohibition against excessive bail. The Letter contended that it was unconstitutional for judicial officers to "impose a financial condition set solely to detain

---

[2] *See Why We Need Pretrial Reform*, PRETRIAL JUSTICE INSTITUTE, http://www.pretrial.org/get-involved/learn-more/why-we-need-pretrial-reform/ (last visited Aug. 13, 2018) (*quoting* Jonah B. Gelbach & Shawn D. Bushway, *Testing for Racial Discrimination in Bail Setting Using Nonparametric Estimation of a Parametric Model*, SSRN (Aug. 20, 2011), https://dx.doi.org/10.2139/ssrn.1990324).

[3] *See, e.g.*, Thomas H. Cohen and Brian A. Reaves, *Pretrial Release of Felony Defendants in State Courts* 7 (Washington D.C.: Bureau of Justice Statistics, 2007), https://www.bjs.gov/content/pub/pdf/prfdsc.pdf.

[4] R. Schauffler, R. LaFountain, S. Strickland, K. Holt, & K. Genthon, *Examining the Work of State Courts: An Overview of 2015 State Court Caseloads*, NATIONAL CENTER FOR STATE COURTS (2016), http://www.courtstatistics.org/~/media/Microsites/Files/CSP/Criminal/PDFs/EWSC-2016-CRIM-Page-2-Comp.ashx.

the defendant," particularly if "pretrial detention is not justified to meet the State's regulatory goals . . . ." It opined as well that "[c]onditions of pretrial release must instead be the least onerous to reasonably ensure the appearance of the defendant as required, protect the safety of the victim, or ensure that the defendant will not pose a danger to another person or the community." If, however, a court found that cash bail was the least onerous means of ensuring a defendant's appearance, the Letter argued that the judicial officer should be required on the record "to conduct an individualized inquiry into a criminal defendant's ability to pay a financial condition of pretrial release." Following this Letter, the Attorney General formally requested the Court of Appeals's Standing Committee on Rules of Practice and Procedure (the "Rules Committee") to investigate the concerns it expressed in its letter and consider amendments to the Maryland Rules.

The Rules Committee then took up the issue. After a process we will detail next, the Committee voted in favor of recommending the proposed revisions to the Court of Appeals and submitted them to the Court in its 192nd Report (the "Report"). The Report stated that the modified Rule 4-216.1 in particular would "provide clearer guidance to judicial officers regarding the manner in which certain core principles intended to govern decisions regarding the pretrial release of arrested individuals" and help prevent defendants from being "incarcerated, prior to trial, for no reason other than poverty."

### 2.    After: Cash Bail Reform and the New Rules.

After receiving the Letter, the Rules Committee assigned the proposed revisions to the Criminal Rules Subcommittee (the "Subcommittee"). The Subcommittee reviewed

materials submitted by the Attorney General,[5] the Office of the Public Defender,[6] the bail

industry,[7] and other stakeholders,[8] then held a public comment hearing.

---

[5] Letter from Brian E. Frosh, Md. Att'y Gen., to the Hon. Alan M. Wilner, Chair, Standing Comm. on Rules of Prac. and Proc. 1–2 (Oct. 25, 2016), http://www.marylandattorneygeneral.gov/News%20Documents/Rules_Committee_Letter_on_Pretrial_Release.pdf.

[6] Arpit Gupta, *et al.*, *The High Cost of Bail: How Maryland's Reliance On Money Bail Jails The Poor And Costs The Community Millions*, MARYLAND OFFICE OF THE PUBLIC DEFENDER (2016), http://www.opd.state.md.us/Portals/0/Downloads/High%20Cost%20of%20Bail.pdf. (hereinafter "OPD Report").

[7] *See* Paul Clement *et al.*, *Constitutionality of Maryland Bail Procedures*, KIRKLAND & ELLIS LLP (Oct. 26, 2016), http://home.ubalt.edu/id86mp66/PTJC/SymposiumReadings/Kirkland_White_Paper_constitutionality.pdf (hereinafter "Bail Industry Report"); *see also* Letter from Paul Clement & Michael McGinley, Kirkland and Ellis LLP, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Paul Clement & Michael McGinley, Kirkland and Ellis LLP, to Hon. John Morrissey, Chief Judge, District Court of Maryland (Nov. 2, 2016) (on file with Committee); Letter from Paul Clement & Michael McGinley, Kirkland and Ellis LLP, to Hon. Brian Frosh, Attorney General, Maryland (Nov. 15, 2016) (on file with Committee).

[8] *See* Letter from Douglas Colbert, Zina Makar, & Colin Starger, University of Maryland School of Law & University of Baltimore School of Law, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Brian Frank, Criminal Justice Policy Program at Harvard Law School, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Lt. Gov. Boyd Rutherford, State of Maryland, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Paul Clement & Michael McGinley, Kirkland and Ellis LLP, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Debra Gardner, Public Justice Center, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Michael Twigg, Wes Adams, Laura Martin, Joe Riley, Brian DeLeonardo, Anthony Covington, William Jones, Charlie Smith, Lisa Welch, Joseph Cassilly, Dario Broccolino, Harris Murphy, Lance Richardson, Dan Powell, Scott Patterson, Charles Strong, Ella Disharoon, Beau Oglesby, State's Attorneys for Allegany, Anne Arundel, Calvert, Caroline, Carroll, Charles, Dorchester, Frederick, Garrett, Harford, Howard, Kent, Queen Anne's, Somerset, Talbot, Washington, Wicomico, Worcester

The Attorney General urged the Subcommittee (and later the Committee) to recommend the proposed revisions because defendants were being held "in pretrial detention solely because they lack the financial resources to post a monetary bail." He stated that the number of people detained prior to trial had been increasing, and that studies had shown that the financial inability to post bail operated "in a manner inconsistent with State and federal law, ineffective at addressing public safety concerns, disproportionately burdensome to communities of color, and inefficient in its use of State and local resources." He cited studies contending that judicial officers often failed to consider statutorily mandated conditions for pretrial release, including the defendant's "employment status and history" and "financial resources."[9] And, he argued, those same studies found no

---

Counties, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 17, 2016) (on file with Committee); Letter from Thomas V. Mike Miller, Jr. and Robert Zirkin, Maryland General Assembly, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 15, 2016) (on file with Committee); Letter from Mary Lou McDonough, Director, The Prince George's County Government Department of Corrections, to Hon. Alan Wilner, Chair, Standing Committee on Rules of Practice and Procedure (Nov. 3, 2016) (on file with Committee).

[9] The Abell Foundation, *The Pretrial Release Project: A Study of Maryland's Pretrial Release and Bail System*, THE ABELL REPORT (Sept. 12, 2001), https://www.abell.org/sites/default/files/publications/hhs_pretrial_9.01(1).pdf (hereinafter "200l Abell Report"); Shirleen M. Pilgrim, Claire E. Rossmark, & Christine K. Turner, *Maryland Task Force to Study the Laws & Policies Relating to Representation of Indigent Criminal Defendants by the Office of the Public Defender*, DEPARTMENT OF LEGISLATIVE SERVICES, OFFICE OF POLICY ANALYSIS (December 13, 2013), https://msa.maryland.gov/msa/mdmanual/26excom/defunct/html/31represent.html; James Austin and Johnette Peyton, *Maryland Pretrial Risk Assessment Data Collection Study*, JFA INSTITUTE 36–59 (2013), http://goccp.maryland.gov/pretrial/documents/2014-pretrial-commission-final-report.pdf; Commission to Reform Maryland's Pretrial System, *Final Report*, GOVERNOR'S OFFICE OF CRIME CONTROL AND PREVENTION (2014),

relationship between a pretrial detainee's perceived risk and the bond amount set.[10] One

study found an inverse relationship between bail amounts and the risk to public safety, that

bail was set higher for low-risk defendants than for moderate- and higher-risk defendants.[11]

Studies in other jurisdictions with wealth-based pretrial systems found that nearly half of

the most dangerous defendants were able to post bail and reenter the community without

monitoring or supervision by courts.[12] Conversely, the Attorney General pointed to other

jurisdictions such as the District of Columbia,[13] Kentucky,[14] and Colorado,[15] that focused

on pretrial services instead of cash or bond bail. Those systems had higher rates of pretrial

release and subsequent court appearances, and the rate of arrests for new criminal activity

while on pretrial release decreased. He argued that cash bail systems disproportionately

---

http://goccp.maryland.gov/pretrial/documents/2014-pretrial-commission-final-report.pdf (hereinafter "2014 Commission Report"); John Clark, Pretrial Justice Institute, *Finishing the Job: Modernizing Maryland's Bail System*, THE ABELL REPORT, Vol.29, No.2 (June 2016), https://abell.org/sites/default/files/files/cja-pretrial616(1).pdf (hereinafter "2016 Abell Report").

[10] *See supra* n. 9.

[11] *See* 2014 Commission Report, *supra* n. 9.

[12] Laura and John Arnold Foundation, *Developing a National Model for Pretrial Risk Assessment* 1 (November 2013), https://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF-research-summary_PSA-Court_4_1.pdf.

[13] 2014 Commission Report at 24, *supra* n. 9; Ann E. Marimow, *When it comes to pretrial release, few other jurisdictions do it D.C.'s way*, WASHINGTON POST (July 4, 2016), https://www.washingtonpost.com/local/public-safety/when-it-comes-to-pretrial-release-few-other-jurisdictions-do-it-dcs-way/2016/07/04/8eb52134-e7d3-11e5-b0fd-073d5930a7b7_story.html.

[14] 2016 Abell Report at 10, *supra* n. 9.

[15] *Id.* at 11.

affect people of color, whose median household incomes are the lowest in the country. And the 2016 Abell Report revealed that pattern in Maryland: corrections records from Baltimore City, Prince George's County, and Baltimore County revealed that African-American males comprise the bulk of pretrial detainee populations, and many are being held on small bail amounts:

> The economic disparities unleashed by the wealth-based bail system fall most heavily on racial minorities. Studies have consistently shown that African-American defendants have higher bond amounts and are detained on bonds at higher rates than white defendants, a factor contributing to the disproportionate confinement of persons of color. In Maryland, African-Americans comprise roughly 30 percent of the general population but make up 70 percent of prisoners. In Baltimore, African-Americans comprise about 60 percent of the city's residents, but 90 percent of Baltimore jail inmates.[16]

The Attorney General also identified collateral harm from excessive cash bail. Defendants held in pretrial detention risk losing jobs, housing, and even custody of their children.[17] And he argued that the rise in pretrial detention is expensive: pretrial detention costs between $83 and $153 a day per defendant, and a grand total per day of $500,000 to $1,000,000 to Maryland taxpayers for the over 7,000 defendants awaiting trial.[18]

The report by the Office of the Public Defender ("OPD") raised similar concerns.[19]

---

[16] *Id.* at 4.

[17] 2001 Abell Report, *supra* n. 9; Cherise Fanno Burdeen, *The Dangerous Domino Effect of Not Making Bail*, THE ATLANTIC (April 12, 2016), https://www.theatlantic.com/politics/archive/2016/04/the-dangerous-domino-effect-of-not-making-bail/477906/.

[18] 2014 Commission Report at 12, *supra* n .9.

[19] *See* OPD Report, *supra* n. 6.

OPD analyzed 700,000 criminal cases filed in the District Court of Maryland between 2011 to 2015 and found that during that timeframe, 17,434 defendants were detained on bail amounts of less than $5,000.[20] Defendants who posted bail bonds were obligated to pay the bond premium regardless of the outcome in the case, and were comprised disproportionately of African-Americans and those living in Maryland's poorest zip codes. Over that five-year period, the study concluded, African-American defendants were charged at least $181 million, while defendants of all other races combined were charged $75 million. The report also reiterated other research concluding that secured money bail was no more effective than unsecured bonds at ensuring appearances at trial.[21]

Opponents of the proposed rules changes at both meetings offered two primary reasons to reject them. *First*, opponents contended that reforms to pretrial release standards should come from the General Assembly. *Second*, opponents argued that the cost of implementing substantive changes would result in substantial costs to the State and counties, and that bail bond companies played important roles in ensuring the appearance of defendants for trial and in apprehending defendants who didn't. They argued as well that financial conditions created opportunities for defendants to be released, and that eliminating or reducing opportunities for financial conditions would result in more defendants being held pending trial.[22]

---

[20] *Id.* at 4.

[21] *Id.*

[22] Bail Industry Report at 6, *supra* n. 7.

The Subcommittee held a meeting regarding proposed amendments to the cash bail system. The bail industry participated and responded to the proposed amendments at that meeting. The Subcommittee voted to forward the proposed changes to Rule 4-216 to the entire Rules Committee.

The Rules Committee held an open meeting at which the full range of stakeholders appeared and participated. The Rules Committee considered all of the materials and comments and voted to recommend the revisions to the Court of Appeals. In its 192nd Report to the Court, the Committee stated that pretrial release standards have historically fallen within the authority of the Judicial Branch. The Committee saw no evidence that "if more defendants were released, there would be more failures to appear." And saving the resources that would otherwise be expended on pretrial incarceration would "result in [] substantial savings to the State and the counties that operate and fund the detention centers." The Report outlined the proposed amendments to Rule 4-216 and others, and recommended that the Court adopt a new Rule 4-216.1 that clarified further the standards for pretrial release. The proposed changes were constructed from language contained in former Rule 4-216, but were reorganized to follow more closely the Pretrial Release Standards adopted by the American Bar Association.

After receiving the Report, the Court of Appeals held two open hearings and, with a few changes, accepted the Rules Committee's recommendation. The Court adopted the proposed changes to the Rules on February 17, 2017, to take effect on July 1, 2017. The new Rule 4-216.1 begins by articulating the general principle that defendants should be released—with conditions when necessary, and preferably non-financial conditions—

unless the judicial officer finds a reasonable likelihood the defendant won't appear or will be a danger to the community. In addition, the Rule requires judicial officers to consider the individual circumstances of each defendant[23] and to impose the least onerous conditions necessary:

---

[23] Subsection (f) lists the factors the judicial officer must consider in deciding whether to release the defendant and on what terms:

> **(f) Consideration of Factors.**
>
> (1) *Recommendation of Pretrial Release Services Program.* In determining whether a defendant should be released and the conditions of release, the judicial officer shall give consideration to the recommendation of any pretrial release services program that has made a risk assessment of the defendant in accordance with a validated risk assessment tool and is willing to provide an acceptable level of supervision over the defendant during the period of release if so directed by the judicial officer.
>
> (2) *Other Factors.* In addition to any recommendation made in accordance with subsection (f)(1) of this Rule, the judicial officer shall consider the following factors:
>
>> (A) the nature and circumstances of the offense charged, the nature of the evidence against the defendant, and the potential sentence upon conviction;
>>
>> (B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;
>>
>> (C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;
>>
>> (D) any request made under Code, Criminal Procedure Article, § 5-201 (a) for reasonable protections for the safety of an alleged victim;
>>
>> (E) any recommendation of an agency that conducts pretrial release investigations;

**(b) General Principles.**

(1) *Construction.*

(A) This Rule is designed to promote the release of defendants on their own recognizance or, when necessary, unsecured bond. Additional conditions should be imposed on release only if the need to ensure appearance at court proceedings, to protect the community, victims, witnesses, or any other person and to maintain the integrity of the judicial process is demonstrated by the circumstances of the individual case. Preference should be given to additional conditions without financial terms.

(B) This Rule shall be construed to permit the release of a defendant pending trial except upon a finding by the judicial officer that, if the defendant is released, there is a reasonable likelihood that the defendant (i) will not appear when required, or (ii) will be a danger to an alleged victim, another person, or the community. If such a finding is made, the defendant shall not be released.

Cross reference: Code, Criminal Procedure Article, § 5-101. For the inapplicability of the Rules in Title 5 to pretrial release proceedings, see Rule 5-101 (b).

(2) *Individualized Consideration.* A decision by a judicial officer whether or on what conditions to release a defendant shall be based on a consideration of specific facts and

(F) any information presented by the State's Attorney and any recommendation of the State's Attorney;

(G) any information presented by the defendant or defendant's attorney;

(H) the danger of the defendant to an alleged victim, another person, or the community;

(I) the danger of the defendant to himself or herself; and

(J) any other factor bearing on the risk of a willful failure to appear and the safety of each alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within three years of the date the defendant is charged as an adult.

15

circumstances applicable to the particular defendant, including the ability of the defendant to meet a special condition of release with financial terms or comply with a special condition and the facts and circumstances constituting probable cause for the charges.

(3) *Least Onerous Conditions.* If a judicial officer determines that a defendant should be released other than on personal recognizance or unsecured bond without special conditions, the judicial officer shall impose on the defendant the least onerous condition or combination of conditions of release set forth in section (d) of this Rule that will reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, and the community and may impose a financial condition only in accordance with section (e) of this Rule.

(4) *Exceptions.* Nothing in this Rule is intended to preclude a defendant from being held in custody based on an alleged violation of (A) a condition of pretrial release, a release under Rule 4-349, or an order of probation or parole previously imposed in another case, or (B) a condition of pretrial release previously imposed in the instant case.

**(c) Release on Personal Recognizance or Unsecured Bond.**

(1) *Generally.* Except as otherwise limited by Code, Criminal Procedure Article, § 5-101 or § 5-202, unless the judicial officer finds that no permissible non-financial condition attached to a release will reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, or the community, the judicial officer shall release a defendant on personal recognizance or unsecured bond, with or without special conditions. If the judicial officer makes such a finding, the judicial officer shall state the basis for it on the record.

Cross reference: Code, Criminal Procedure Article, § 5-101 (c) precludes release on personal recognizance if the defendant is charged with certain crimes. Section 5-202 of that Article precludes release by a District Court commissioner if the defendant is charged with certain crimes under certain circumstances.

(2) *Permissible Conditions.* Permissible conditions for purposes of this section include the required conditions set

forth in subsection (d)(1) and the special conditions set forth or authorized in subsection (d)(2) of this Rule.

Subsection (d) of the new Rule lists the permissible conditions of release, and financial conditions come last (before only the catch-all provision):

**(d) Special Conditions of Release.**

(1) *Required Conditions.* There shall be included, as conditions of any release of the defendant, that (A) the defendant will not engage in any criminal conduct during the period of pretrial release, and (B) the defendant will appear in court when required to do so.

(2) *Special Conditions.* Subject to section (b) of this Rule, special conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation:

> (A) one or more of the conditions authorized under Code, Criminal Law Article, § 9-304 reasonably necessary to stop or prevent the intimidation of a victim or witness or a violation of Code, Criminal Law Article, §§ 9-302, 9-303, or 9-305, including a general no-contact order;

> (B) reasonable restrictions with respect to travel, association, and place of residence;

> (C) a requirement that the defendant maintain employment or, if unemployed, actively seek employment;

> (D) a requirement that the defendant maintain or commence an educational program;

> (E) a reasonable curfew, taking into account the defendant's employment, educational, or other lawful commitments;

> (F) a requirement that the defendant refrain from possessing a firearm, destructive device, or other dangerous weapon;

> (G) a requirement that the defendant refrain from excessive use of alcohol or use or possession of a narcotic drug or other controlled dangerous substance, as defined in Code, Criminal Law Article, § 5-101 (f), without a prescription from a licensed medical practitioner;

17

(H) a requirement that the defendant undergo available medical, psychological, or psychiatric treatment or counseling for drug or alcohol dependency;

(I) electronic monitoring;

(J) periodic reporting to designated supervisory persons;

(K) committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court;

(L) execution of unsecured bonds by the defendant and an uncompensated surety who (i) has a verifiable and lawful personal relationship with the defendant, (ii) is acceptable to the judicial officer, and (iii) is willing to execute such a bond in an amount specified by the judicial officer;

(M) execution of a bond in an amount specified by the judicial officer secured by the deposit of collateral security equal in value to not more than 10% of the penalty amount of the bond or by the obligation of a surety, including a surety insurer, acceptable to the judicial officer;

(N) execution of a bond secured by the deposit of collateral security of a value in excess of 10% of the penalty amount of the bond or by the obligation of a surety, including a surety insurer, acceptable to the judicial officer; and

(O) any other lawful condition that will help ensure the appearance of the defendant or the safety of each alleged victim, other persons, or the community.

But perhaps the most significant change comes in subsection (e), which specifically forbids judicial officers from imposing financial conditions of release that a defendant cannot meet:

**(e) Release on Special Conditions.**

(1) *Generally.*

(A) A judicial officer may not impose a special condition of release with financial terms in form or amount that results in the pretrial detention of the defendant solely because the defendant is financially incapable of meeting

that condition. In making that determination, the judicial officer may consider all resources available to the defendant from any lawful source.

(B) Special conditions of release with financial terms are appropriate only to ensure the appearance of the defendant and may not be imposed solely to prevent future criminal conduct during the pretrial period or to protect the safety of any person or the community; nor may they be imposed to punish the defendant or to placate public opinion.

(C) Special conditions of release with financial terms may not be set by reference to a predetermined schedule of amounts fixed according to the nature of the charge.

(2) *Other Permissible Conditions.* If the judicial officer finds that one or more special conditions also may be required to reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, or the community, the judicial officer may impose on the defendant one or more special conditions in accordance with section (d) of this Rule.

As a result, the Rule leaves cash bail only as a last resort, and only when it's the least onerous condition that will secure the defendant's appearance or protect the public. And if the judicial officer has made that predicate finding, he must then conduct an individualized inquiry into the defendant's ability to pay and make such a finding on the record before setting the bond.

### B. Messrs. Bradds and Hill.

#### 1. Mr. Bradds

On January 17, 2018, Mr. Bradds was charged with first-degree burglary, third-degree burglary, fourth-degree burglary, malicious destruction of property, and theft between $100 and $1500. The charges arose from allegations that on January 13, 2018, he broke into the home of his brother's fiancée and stole a flat screen television and a digital

camera and damaged the front door to the home. Mr. Bradds was arrested on January 19, 2018, pursuant to a warrant.

When Mr. Bradds appeared before a district court commissioner, his bail was set at $25,000. He was unable to pay this amount and remained in jail awaiting a bail review hearing. The OPD represented Mr. Bradds at his bail review hearing. His counsel asked the court to convert Mr. Bradds's $25,000 secured bond to an unsecured bond. Counsel argued that Mr. Bradds did not have a steady job and had recently enrolled in a methadone treatment program. The court also reviewed Mr. Bradds's criminal history, which included six convictions for non-violent crimes, one probation before judgment, and eleven failures to appear. The State made no recommendation regarding bail or pretrial release. The court asked no additional questions about Mr. Bradds's ability to post bail, and the State offered no evidence suggesting that he could. The court noted that it had been leaning toward holding Mr. Bradds without bail, but instead increased the amount of his secured bond to $50,000:

> THE COURT: All right. Let's turn [to] Bradds. All right. Mr. Bradds, this is State of Maryland v. Aaron Bradds. This is Case No. 1B02133328 charging you with first-degree burglary, maximum penalty 20 years; third degree burglary, maximum penalty 10 years; fourth-degree burglary dwelling, 3-year maximum; fourth-degree burglary theft, 3-year maximum; theft $100 to under $1,500, 6 months and/or $500 fine; malicious destruction of property valued under $1,000, 60 days and/or a $500 fine.
>
> Mr. Bradds, the Public Defender has made a preliminary hearing request for you. You also have a right to a jury trial. Your next court date is February 15th at the Patapsco Avenue District Courthouse. Mr. Bradds, do you understand the charges and the rights I explained to you earlier?

MR. BRADDS: Yes, Your Honor.

THE COURT: Okay. Pretrial?

PRETRIAL INVESTIGATOR: Your Honor, Defendant refused Pretrial's interview. He has six convictions on record. Most recent, January of 2016 theft; March 2016 conspiracy burglary in the first; August 2012, unauthorized removal of property; March 2012, a theft; July 2012, felony CDS; and June 2004, misdemeanor CDS. He has one PBJ from June 2011 for CDS paraphernalia. He has seven FTA's on record, most recent May 2015. He has four additional in the year of 2011 and May of 2012. Your Honor, Pretrial does not have a statement of probable cause at this stage –

THE COURT: This is the one where – well, I tell you what –

STATE'S ATTORNEY: I actually don't have a copy of it either, Your Honor.

THE COURT: Well, I'm going to enlighten both of you then. So on Saturday, January 13th, at around 11:30 in the evening, police respond to 346 South Payson Street, Apartment B for a call of burglary. They're met by a Ms. Shore. She advises that earlier that day at about 1:30 in the afternoon, she left for work[,] dwelling locked and secured, all property there. She gets home at 11:15 p.m., the front door is forced open. Her flat screen TV, her digital camera are missing. Approximate value $500. Door is damaged as well.

Investigation reveals that on the day of the incident, a female relative of the victim observed – and here's where it gets a little – observed the victim's fiancé's brother. So in other words, the victim, Ms. Shore, has a fiancé if I'm reading this correctly, and that Mr. Bradds is the brother of the fiancé. He is seen walking in the vicinity of the house. In addition, another neighbor reports seeing someone actually breaking into the dwelling shortly before 4:30 on the – 4 o'clock on the day of the incident. The neighbor confronted the suspect in the act. The suspect replied, "It's my brother's house," and continued to force his way inside. A detective administers a double-blind photo array to this neighbor who saw the break-in. This on the Wednesday the 17th, four days later. Mr. Bradds, as the person he saw breaking into the house. The victim's fiancé who, again, I think Mr. Bradds is the brother of, never lived in the victim's house and neither he nor the suspect had permission to be

21

inside the house on the day in question. That is the Statement of Charges.

PRETRIAL INVESTIGATOR: In light of those allegations, Your Honor, the Defendant broke into the dwelling. Pretrial is recommending that bail be revoked. The Defendant is a threat to public safety and a threat to the victim.

THE COURT: Okay. [Defense Counsel].

[DEFENSE COUNSEL]: Thank you, Your Honor. [Defense Counsel] on behalf of Mr. Bradds. Your Honor, I'd be asking the Court to convert this from the $25,000 secured bail to $25,000 unsecured in light of the fact that Mr. Bradds does not have a steady job. Your Honor, he is 27-years-old. He does live at 1611 McHenry Street. He's lived there his entire his life, lives there with his grandparents and also one of his uncles. Your Honor, Mr. Bradds freely admits he has had an issue with substance abuse. His conviction history basically substantiates that. Both CDS and sort of –

THE COURT: Well, that's –

[DEFENSE COUNSEL]: – offenses that are related to his past.

THE COURT: – I agree. I agree with that [Defense Counsel] and one of those offenses, though, is a first-degree burglary from not long ago in 2016.

[DEFENSE COUNSEL]: I do understand that, Your Honor. He's served his sentence on that and it's completed.

THE COURT: Well, no, no. My point is, individuals oftentimes, to feed their addiction, will engage in behavior that can be – you know, first-degree burglary poses so many dangers. It poses a danger to the person committing the act. They could be confronted by someone inside. It poses a danger, probably the bigger danger potentially, is if someone's home, that person can be – fall prey to some physical harm as well. It's, you know –

[DEFENSE COUNSEL]: I certainly understand what the Court is saying. What I wanted to explain to the Court is that Mr. Bradds just started going to a methadone program. So he is trying to address his substance abuse issue. He just started that last week on the 16th, which I think would've been Wednesday of last week. He actually went to University of Maryland – because he's –

22

THE COURT: No, it would've been last Tuesday.

[DEFENSE COUNSEL]: Tuesday, my apologies, he is suffering from pneumonia, so he went to the University of Maryland. As long as he was there, he decided you know what, this is time for me to finally address this and he started going to the methadone program there.

And he certainly denies the allegations in this case. I would note that he has some failures to appear. They haven't happened recently. He does have a pending matter in which I represent him that is scheduled for this Friday. He has always appeared in court for that matter. I think [he's] been in court at this point three times. He has always been in court on time. So we'd be asking the Court to consider an unsecured bail in this case in the amount of $25,000 and, obviously, require that he complete or continue with the drug treatment that he just began, Your Honor.

THE COURT: All right. I don't think I'm prepared to adopt either recommendation. I was leaning towards the no bail for a combination of factors; the criminal record, the facts of this case, the multiple FTA's. Certainly, unsecured in my mind is not appropriate. I am going to revise bail to $50,000 at 10 percent. If Mr. Bradds posts bond, he'll be on Pretrial supervision, drug screening, no contact with victim, stay away from 349 – or, no, 346 South Payson Street.

The last sentence bears emphasizing: "**[*i*]***f* Mr. Bradds posts bond," he would be required to obey several release conditions. (Emphasis added.)

Mr. Bradds was unable to obtain a bond and remained incarcerated in the Baltimore City Jail until at least the time of oral argument before this Court. In February, Mr. Bradds had been charged by indictment for his crimes in the Circuit Court for Baltimore City, and the underlying district court case was closed.

In March, Mr. Bradds filed a petition for writ of *habeas corpus* in the circuit court. In his supporting affidavit, he stated that he was twenty-seven years old, that he helps to support his seven- and eleven-year-old children, as well as his grandparents, but had been

23

unemployed for months, did not receive public benefits, did not have any assets, and could not afford bail. The State did not respond to his petition. The circuit court denied the petition, without a hearing, in an order filed on March 15, 2018. Mr. Bradds filed an application for leave to appeal the circuit court's denial of his petition for writ of *habeus corpus*, which we granted on April 27, 2018. His case was scheduled for trial in the circuit court on July 9, 2018.

### 2. Mr. Hill

On January 11, 2018, Mr. Hill was charged with two counts of first-degree burglary, two counts of third-degree burglary, four counts of fourth-degree burglary, conspiracy to commit burglary, theft between $100 and $1500, malicious destruction of property, and reckless endangerment. He was alleged to have broken into three properties in Baltimore City owned by the same person and stolen electronics, a water heater, and a kitchen stove. The removal of the water heater in one property resulted in flooding that caused significant damage, and the disconnection of the stove caused a serious gas leak. He was arrested on January 27, 2018, pursuant to a warrant.

Mr. Hill's bail was set at $35,000 by a district court commissioner. He was unable to pay and remained in jail awaiting a bail review hearing. An attorney from the Office of the Public Defender represented Mr. Hill at the hearing. His attorney and the pretrial services agent both requested that Mr. Hill be released on his own recognizance with pretrial supervision. The State did not offer an alternate release plan. The court heard no information about Mr. Hill's employment, income, or assets. But the court did learn of Mr. Hill's criminal history, which included multiple convictions for theft and drugs in

24

Maryland, as well as convictions in West Virginia for domestic violence, breaking and entering, daytime housebreak, shoplifting, and burglary.

At the close of the bail review hearing, the court declined the suggestion of pretrial services and defense counsel and raised Mr. Hill's bail to $50,000, payable at 10 percent:

> THE COURT: Now on the docket is Samuel Lloyd Hill, Jr., Case No. 5B02365242. Thank you, Mr. Hill. Mr. Hill, you are charged in this matter with burglary in the first-degree. Carries a maximum penalty of 20 years. You're also charged with another count of burglary first-degree carry the same max penalty, two counts of burglary in the third-degree carries a maximum penalty of 10 years each. Four counts of fourth-degree burglary, each which carry a maximum penalties of 3 years. Two counts of malicious destruction under $1,000 carries – each carry a maximum penalty of 60 days and/or $500 fine. Two counts of theft and property value between $100 and $1,500 carries a maximum penalties of 6 months and/or $500 fine each. One count of reckless endangerment carries a maximum penalty of 5 years and/or $5,000 fine. One count of conspiracy to commit – two counts of conspiracy to commit first-degree burglary, each of which carry a maximum penalty of 20 years incarceration.
>
> Pretrial?
>
> PRETRIAL INVESTIGATOR: Your Honor, the Defendant's information was not verified. The Defendant refused to be interviewed. Your Honor, the Defendant has a total of nine convictions on record. Most recent January of 2013 for one count of burglary. One count for a felony CDS. And I'm sorry, Your Honor, that burglary has an active parole set to expire July 2025. The Defendant has one for felony CDS. Four for misdemeanor theft. Three for misdemeanor CDS. Five FTA's on record, Your Honor. Most recent, February of 2009 through December of 2006. The Defendant is pending a matter out of Wabash dated February 7th, 2018, 8:30 a.m., Room 3. This involves MTA fine in the amount of $50. A citation was issued January 9, 2018 for soliciting purchase of goods from transit.
>
> Your Honor, the Defendant has out-of-state ties to West Virginia with seven convictions on record. Most recent, December of 2013 for domestic violence. One for breaking and

entering. One for destruction of property. One for daytime house break. One for shoplifting. One for burglary, daytime. One for destruction of property. Your Honor, Commissioner has set bail at 35,000. In light of the allegation of burglarized private property, taking into account most recent burglary conviction in the state of Maryland was during the year of 2013. Most recent out of state conviction for breaking and entering and burglary was during the year of 2013. The Defendant's most recent FTA was during the year of 2009.

Your Honor, to ensure the Defendant's appearance in court, Pretrial is requesting that the Defendant be released on his own recognizance with Pretrial supervision. He did not return to said location.

THE COURT: State?

STATE'S ATTORNEY: State submits, Your Honor.

[DEFENSE COUNSEL]: Your Honor, I'll certainly join, brief. Again, [Defense Counsel] on behalf of Mr. Hill. Ask this matter is set for preliminary hearing. I'll certainly join and repress [sic] as being made by Pretrial.

THE COURT: I'm sorry. Pretrial, can we go over his record once again, please?

PRETRIAL INVESTIGATOR: Yes, Your Honor. In the state of Maryland, the Defendant has nine convictions on record. Most recent, January of 2013 for one count of burglary with an active parole set to expire July 2025. The Defendant has four – sorry, four convictions for misdemeanor theft. Once for CDS distribution, felony CDS, and three for misdemeanor CD[S]. The Defendant has out-of-state ties to West Virginia with seven convictions on record. Most recent, December of 2013 for domestic violence. One for breaking and entering. One for destruction of property. One for daytime housebreak. One for shoplifting.

THE COURT: Thank you very much.

PRETRIAL INVESTIGATOR: One for burglary, yes.

THE COURT: Does your client want anything?

[DEFENSE COUNSEL]: No, no he does not, Your Honor.

MR. HILL: (Indiscernible -20:14:04.)

26

[DEFENSE COUNSEL]: Mr. Hill, I don't think that's a good idea.

THE COURT: I'm sorry, he says he wants to add something?

[DEFENSE COUNSEL]: Your [sic] certainly, if you'd like to say something, you certainly can.

[MR. HILL]: (Indiscernible – 20:14:11.)

[DEFENSE COUNSEL]: I've advocated on your behalf. And these proceedings are being recorded. Please don't discuss the facts of the case. And I would just allow you to request the Judge to make his decision based on all the things that he's heard up to this point.

[MR. HILL]: I understand. I just want to say that the conviction of burglary, the only recent burglary that I had was in West Virginia. I've never had a conviction of burglary in Maryland. I do not know what that's about. And the domestic violence case, I don't know what that's about. And the domestic violence case, I don't know what that's about either. My father – me and my father had (indiscernible 20:14:48).

THE COURT: All right.

[MR. HILL]: So that's –

THE COURT: Thank you. Mr. Hill, I'm actually more concerned about your very lengthy history of thefts in these matters regarding your history of theft in these cases. They seem to be so frequent that it alarms me.

[MR. HILL]: I really didn't get into trouble in years.

THE COURT: When's the last time he's – Pretrial, when was the last conviction?

PRETRIAL INVESTIGATOR: 2013, Your Honor.

THE COURT: Years? I guess that is years.

PRETRIAL INVESTIGATOR: And Pretrial notes –

THE COURT: Bail in this matter is set at $50,000 at 10 percent.

Mr. Hill could not afford the increased (or original) bail and remained incarcerated in the Baltimore City Jail through oral argument in this Court.

27

In March, Mr. Hill filed a petition for a writ of *habeas corpus* in the Circuit Court for Baltimore City. In his supporting affidavit, he stated that he is twenty-nine years old, unemployed, has no savings or assets, has more than $10,000 in personal debt, provides for his two-year-old son, is the sole caretaker of his mother who suffers from congestive heart failure, and cannot afford bail. The State did not respond. The circuit court denied the petition without a hearing on March 15, 2018 and Mr. Hill filed an application for leave to appeal on March 23, 2018. We granted the application. Mr. Hill's trial was set in the Circuit Court for Baltimore City on June 27, 2018.

## II.    DISCUSSION

After oral argument in this Court, we issued an Order reversing the circuit court's decisions to deny *habeas corpus* relief to Messrs. Bradds and Hill, and remanding the cases to the circuit court with directions to grant the petitions and order a new bail review. We now explain our reasoning.

### A.  The Court Did Not Apply The Revised Maryland Rules Correctly.

The revisions to Rule 4-216.1 arose from concerns, and evidence, that low-income defendants were being incarcerated pending trial merely because they could not afford financial conditions for release. Although the new Rule did not eliminate cash or bond bail as some had advocated, the revised Rule 4-216.1 specifically prioritizes release over detention, release on own recognizance over release with conditions, and non-financial conditions over financial conditions. Even more to the point, the Rule requires judicial officers to consider each defendant's individual circumstances when setting conditions for release, and specifically to consider "the ability of the defendant to meet a special condition

28

of release with financial terms." *Id.*, (b)(2). Financial conditions remain available, but any financial condition set cannot cause what amounts to pretrial detention simply because the defendant cannot afford to pay the bail amount set by the court:

> **(e) Release on Special Conditions.**
>
> (1) *Generally.*
>
> (A) A judicial officer ***may not impose a special condition of release with financial terms in form or amount that results in the pretrial detention of the defendant solely because the defendant is financially incapable of meeting that condition.*** In making that determination, the judicial officer may consider all resources available to the defendant from any lawful source.
>
> (B) ***Special conditions of release with financial terms are appropriate only to ensure the appearance of the defendant and may not be imposed solely to prevent future criminal conduct during the pretrial period or to protect the safety of any person or the community***; nor may they be imposed to punish the defendant or to placate public opinion.
>
> (C) Special conditions of release with financial terms may not be set by reference to a predetermined schedule of amounts fixed according to the nature of the charge.

Md. Rule 4-216.1(e)(1–3) (emphasis added).

Of course, the record before the bail review court could have supported a range of outcomes. Both men could readily have been detained pending trial: Mr. Hill had five failures to appear, Mr. Bradds had eleven, and both faced serious charges that might have supported a finding that either or both were too dangerous to the community to release. Both men were charged with burglary, which carries a risk of physical confrontation with the homeowner or others who may be present:

> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the

29

> burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

*James v. United States*, 550 U.S. 192, 203 (2007), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *see also Sykes v. United States*, 564 U.S. 1, 9 (2011) ("Burglary is dangerous because it can end in confrontation leading to violence."), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). Even fourth-degree burglary risks physical confrontation and violence. *United States v. Martin*, 753 F.3d 485, 491–92 (4th Cir. 2014) ("[T]he potential risk of physical injury arising from the commission of fourth-degree burglary under Md. Code Ann., Crim. Law § 6–205(a) is comparable to that arising from the commission of generic burglary. Critical to this conclusion is the fact that § 6–205(a) requires entry into a *dwelling* . . . dwellings—unlike 'storehouses'—are 'likely to be occupied.' . . . the crime of breaking and entering the dwelling house of another creates 'a substantial risk of confrontation.' This risk of confrontation is *precisely* the same risk that makes generic burglary a dangerous crime.") (cleaned up). In fact, according to Mr. Bradds, the district court originally seemed inclined to hold Mr. Bradds without bail due to "a combination of factors; the criminal record, the facts of this case, the multiple FTA's." And had the court found that there was a reasonable likelihood that either defendant would not appear or would be a danger to an alleged victim, another person, or the community, the court would have been *precluded* from releasing him. Rule 4-216.1(b)(1)(B)

The problem arises in Mr. Bradds's case because the court leapt immediately from

a discussion of possibly detaining him to a decision to increase his bail, without any consideration of whether he should be held or of less onerous conditions or of his ability to pay. The Rules would readily have permitted the court to find that he was too dangerous to release or that his repeated failures to appear created a flight risk, and the record would have justified such a finding. Failing that, though, and assuming that the court is unpersuaded by the evidence and argument offered at the hearing that the public safety isn't compromised by releasing Mr. Bradds on his own recognizance, the Rules required the court to discern, based on his individual circumstances, and impose the least onerous conditions necessary to ensure his appearance and protect the public. The court made reference to alternative conditions—"Pretrial supervision, drug screening, no contact with victim, stay away from 349 – or, no, 346 South Payson Street"—but only as conditions that would kick in "if" Mr. Bradds posted bail. This placed the cart before the horse: before considering financial conditions, the court had to find they were the only conditions that could ensure Mr. Bradds's appearance for trial, and *then* Rules 4-216 and 4-216.1(c)(1) required the court to determine his ability to pay and set bail at a level he could achieve.

The court in Mr. Hill's case did not have as detailed a record, but did note that it was "more concerned about [Mr. Hill's] very lengthy history of thefts in these matters," and that the thefts "seem to be so frequent that it alarms me." Soon after that comment, and after ascertaining that his last conviction was years prior in 2013, the court raised his bail to $50,000 at 10 percent. Like Mr. Bradds, the record would have supported a decision to hold Mr. Hill without bail and reject the release recommendation of pretrial services. But once the court chose instead to release him on conditions, the Rules required it to consider

31

non-financial conditions first and then, only after finding a financial condition necessary, required it to consider "the ability of the defendant to meet a special condition of release with financial terms" and "impose on the defendant the least onerous condition or combination of conditions of release . . . that [would] reasonably ensure [] the appearance of the defendant, and [the safety of the community]." Md. Rule 4-216.1(b)(2–3). And when determining the appropriate amount of bail, the Rule required the court to consider the "resources available to the defendant from any lawful source" and prohibited it from imposing "a special condition of release with financial terms in form or amount that results in the pretrial detention of the defendant solely because the defendant is financially incapable of meeting that condition." Md. Rule 4-216.1(e)(1)(A).

In both of these cases, intentionally or not, the records suggest that the court fell back on the approach common under the old Rules, not the Rules as revised. Both courts had a record on which they could have determined whether these defendants should have been held as dangerous or as flight risks. Once the courts decided not to hold these defendants, they should have considered non-financial conditions before considering financial conditions. And once the courts considered and rejected non-financial conditions, the court should have assessed the defendants' financial status and set financial conditions that they had an opportunity to meet. Because the courts set bail without considering alternative non-financial conditions or assessing the defendants' abilities to satisfy financial conditions, we reversed the circuit court's decision to deny their petitions for writs of *habeas corpus* and ordered bail hearings consistent with the revised Rules.

If, as it appears, the courts did not intend for these defendants to be released pending trial, the courts should not have accomplished that goal by setting bond at a level these indigent defendants could not meet. Financial conditions should be imposed only as a last resort, and only as conditions of *release*, *i.e.*, at a level that the individual defendant has a reasonable prospect of satisfying. Even when financial conditions are used appropriately—circumstances that should be a rare exception under the new Rules, not the norm—those conditions must reflect the defendant's individual financial circumstances and must be set at a level that will permit him an opportunity to achieve his release. Financial conditions designed to thwart or eliminate the possibility of release violate the letter of the applicable Rules and the principles underlying them.

We do not mean remotely to suggest that the Rules entitled these defendants to be released. Again, the record before bail review courts contains undisputed information that could have supported findings to hold both of them had the court undertaken the correct analysis. But because the courts decided not to do so, then skipped over any consideration of non-financial conditions, its decisions to impose these financial conditions on these indigent defendants were inconsistent with the revised Rules.